# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| LAMONT L. TANNER, | ) |
| | ) 3:13-cv-00435-HDM-VPC |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF U.S. MAGISTRATE JUDGE** |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) July 31, 2014 |
| | ) |

This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand and/or reversal (#13).[1] Defendant filed a cross-motion to affirm (#18). Plaintiff replied (#19). For the reasons set forth below, the court recommends that plaintiff's motion for remand and/or reversal be denied and that defendant's cross-motion to affirm be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lamont L. Turner ("plaintiff") was a fifty-seven-year-old man with at least a high school education on the alleged disability onset date of January 28, 2007 (Administrative Record ("AR") 28, 38). On March 14, 2008, he filed an application for disability insurance benefits under Title II and an application for supplemental security income under Title XVI. *Id.* at 145. The Commissioner denied plaintiff's applications initially and on reconsideration. *Id.*

---

[1] Refers to the court's docket number.

On October 20, 2009, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Mark C. Ramsey. *Id.* at 57-101. The ALJ followed the five-step sequential process for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on May 20, 2010, finding plaintiff had "not been under a disability" pursuant to the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision. *Id.* at 142-155. Plaintiff appealed, and the Appeals Council granted the request for review and remanded the matter with instructions to obtain evidence from a medical expert—if one was available—to clarify the nature and severity of plaintiff's mental impairment. *Id.* at 160-164.

On June 13, 2012, plaintiff and his attorney appeared at the remand hearing before ALJ Eileen Burlison. *Id.* at 102-137. ALJ Burlison issued an unfavorable decision on August 30, 2012. *Id*. at 24-40. Plaintiff filed a request for review with the Appeals Council on October 23, 2012, which was denied on June 26, 2013. *Id*. at 22, 1-14. Thus, the ALJ's decision became the final decision of the Commissioner.

On September 18, 2013, having exhausted all administrative remedies, plaintiff, through counsel, filed a complaint for judicial review (#3). Plaintiff argues that the ALJ improperly rejected the treating physician's opinion regarding the severity of plaintiff's mental impairments, and the decision lacks the support of substantial evidence in the record (#13, pp. 4-11). Accordingly, plaintiff asks the court to reverse or remand the ALJ's decision. *Id.* at 1-2.

## II.  STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id*. at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423 (d)(1)(A).

### III. DISCUSSION

**A. Five-Step Sequential Process**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 ("Listed Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal

one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); compare *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth in rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers

of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

The ALJ may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation." *Hoopai*, 499 F.3d at 1076 (internal quotation and citation omitted). Further, where the ALJ finds that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation); the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. at 1076.

If, at step five, the ALJ establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante*, 262 F.3d at 954.

**B. ALJ's Findings**

The ALJ found that plaintiff suffers from the severe impairments of degenerative disc disease; degenerative joint disease; history of post-traumatic stress disorder; depression and adjustment disorder with mixed emotional features, otherwise described as adjustment disorder with mixed anxiety and depression and mood disorder due to general medical conditions (AR 30). The ALJ determined that plaintiff has past relevant work as a delivery driver, which is considered a medium, semi-skilled position with a specific vocational preparation ("SVP") of 3. *Id.* at 37. The ALJ also found that plaintiff retains the RFC to perform medium work with the limitations of only occasional posturals, avoidance of hazards and no more than brief and superficial interaction with the general public. *Id.* at 37.

The ALJ considered plaintiff's age, education, work experience and RFC, and found that plaintiff can perform jobs that exist in significant numbers in the national economy. *Id.* at 38. Accordingly, the ALJ determined that plaintiff "has not been under a disability," as defined in the Social Security Act. *Id.* at 39. Specifically, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

2. The claimant has not engaged in substantial gainful activity since January 28, 2007, the alleged onset date (20 C.F.R. § 404.1571 *et seq*., and § 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease; degenerative joint disease; history of post-traumatic stress disorder; depression and adjustment disorder with mixed emotional features, otherwise described as adjustment disorder with mixed anxiety and depression and mood disorder due to general medical conditions (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (20 C.F.R. §§§§§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. The claimant must avoid hazards, working at heights or operating dangerous, moving, machinery. Further, the claimant is to have no more than brief and superficial interaction with the public.

6. The claimant is capable of performing past relevant work as a Delivery Driver and Assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on December 22, 1949, and was 57 years old, which is defined as an individual of advanced age, on the amended disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 C.F.R. §§§§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, from January 28, 2007, through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920 (f)).

*Id.* at 30-39.

## C. RFC Finding

Plaintiff challenges the ALJ's RFC finding by asserting that she failed to adequately articulate her reasons for discounting the opinions of his treating physician and lacked substantial evidence to discount those opinions (#13, pp. 4-6). Defendant argues that the ALJ discussed the treating physician's opinion in detail and offered valid reasons to reject it, all of which were supported by the record and by the law (#18, p. 4).

Generally, an ALJ should give more weight to the opinion of a treating source than to the opinion of non-treating doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. *Lester*,

81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

However, "[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). The ALJ must also consider the opinions of state agency consultative examiners. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). When the opinions of treating and examining doctors conflict, it is the ALJ's duty to resolve the conflicts. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). "[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an examining physician's opinion "alone constitutes substantial evidence, because it rests on [the doctor's] own independent examination of [the claimant]").

Further, the ALJ must also consider the findings of fact and opinions of non-examining state agency medical and psychological consultants and other program physicians and psychologists, who are experts in Social Security disability programs. Social Security Ruling ("SSR") 96-6p, 1996 WL 374186. Such consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act . . . they consider the medical evidence in disability cases and make findings of fact on medical issues, including, but not limited to, the existence and severity of an individual's impairment." *Id.* The ALJ may rely on opinions from state agency reviewers if those opinions are well-supported and consistent with the record as a

whole. *Id*. "[O]pinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id*.

Here, the ALJ indicated that the medical records reflect that the plaintiff was diagnosed with degenerative disc disease, degenerative joint disease, history of post-traumatic stress disorder, depression and adjustment disorder with mixed anxiety and depression and mood disorder due to general medical conditions, for which he has been undergoing treatment since at least 2007 (AR 30).

The ALJ considered the opinion of John VanBiber, M.D., the plaintiff's treating physician at the Department of Veterans Affairs. *Id*. at 34-37. Dr. VanBiber filled out a mental RFC questionnaire and indicated that the plaintiff suffers from post-traumatic stress disorder, depression, and a mood disorder. *Id*. at 705-710. Based on a treating relationship since 2006, Dr. VanBiber opined that the plaintiff should not obtain or maintain any type of employment. *Id*. at 716. In 2009, Dr. VanBiber opined in a medical source statement that the plaintiff was unable to meet competitive standards for many of the mental functioning abilities and aptitudes needed to perform even unskilled work. *Id*. at 707. Additionally, in 2010, Dr. VanBiber stated, "It continues to be my opinion that this veteran will have significant difficulty with any type of new stressful situations such as new social contacts, being told what to do by authority figures, being in situations where he feels confined." *Id*. at 716.

The ALJ accorded partial weight to Dr. VanBiber's opinions that the plaintiff has more than minimal functional limitations with regard to social functioning. *Id*. at 35. However, the ALJ accorded little weight to his opinion that the plaintiff is completely unable to work, or even that his social functioning imitations are marked because she found that opinion "inconsistent with the objective evidence of the record." *Id*. More specifically, the ALJ concluded that Dr. VanBiber's

opinion is inconsistent with his own treatment notes and findings as well as the plaintiff's own reporting of his symptoms. *Id*. at 36. For example, Dr. VanBiber opined the plaintiff was likely to decompensate significantly, posing a danger to himself, if he were exposed to added stressors. *Id*. at 716-718. However, the plaintiff consistently underwent unremarkable mental status examinations with Dr. VanBiber, showing no evidence of suicidal or homicidal ideation, and Dr. VanBiber indicated in his notes that plaintiff is not at a high risk for suicide. *Id*. at 766, 773, 930, and 972. Additionally, the ALJ notes that "the medical record contains over five years of evidence that claimant is able to, on an extremely frequent basis, interact and respond appropriately and effectively with numerous physicians and hospital staff, request medication refills in person and over the telephone, attend appointments, and submit to numerous confining diagnostic tests such as MRIs." *Id*. at 35, (citing medical records at 464, 511, 537-555, and 768). The ALJ concluded that plaintiff's ability to maintain those activities is inconsistent with Dr. VanBiber's opinion the plaintiff has significant difficulty with any type of new, stressful situation such as new social contacts, interacting appropriately with the public, or being in situations where he feels confined. *Id*. at 705-710.

The ALJ also considered the opinion of state agency psychological consultant, James Derbin, M.D., who reviewed the record and concluded that plaintiff's mental impairments were not severe. *Id*. at 446-459. The consultant based his opinion on a review of the medical records showing that plaintiff's daily activities revealed that most of his impairments stemmed from physical issues. *Id*. at 458. The medical records indicated that he was generally stabilized on his psychiatric medication with limited impairments in his functional activities from his medically determinable psychiatric issues. *Id*. The ALJ gave no weight to this opinion because "it is inconsistent with the record as a whole, including the opinion of the claimant's treating psychiatrist." *Id*. at 34.

With respect to plaintiff's physical impairments, the ALJ considered the report of consultative examiner Steven E. Gerson, D.O., (Doctor of Osteopathic Medicine). *Id*. at 460-467. Dr. Gerson concluded that plaintiff is capable of a reduced range of medium work with various limitations. *Id*. He based this opinion on plaintiff's subjective complaints of pain as well as his physical examination of the plaintiff. Dr. Gerson found that plaintiff had a full range of motion in his neck, a full strength bilateral hand grasp, negative straight leg raising test bilaterally, intact bilateral fine motor coordination, and slightly reduced ranges of motion in his bilateral hips. *Id*. Additionally, Dr. Gerson noted that plaintiff had no difficulty getting on and off the examination table, only mild difficulty tandem walking and walking on his toes and heels, and moderate difficulty squatting and rising. *Id*. The ALJ accorded partial weight to Dr. Gerson's opinion that plaintiff is capable of a reduced range of medium work to the extent it is consistent with the ALJ's residual functional capacity determination. *Id*. at 33.

Based on all three reports, the ALJ concluded that plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except no more than occasional climbing balancing stooping, kneeling, crouching, or crawling, must avoid hazards, working at heights or operating dangerous, moving, machinery. *Id*. at 32. He is further limited to no more than brief and superficial interaction with the general public. *Id*.

Plaintiff bears the burden of proving disability. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The ALJ accorded the most weight to the reports of consultative examiner Dr. Gerson and plaintiff's treating physician Dr. VanBiber. The ALJ gave partial weight to both reports to the extent they were consistent with her RFC finding. Plaintiff argues that the ALJ did not properly weigh the opinion of his treating physician. *Id*. at 35-36. A VA determination is ordinarily entitled to great weight. *Berry*, 622 F.3d at 1236; *Valentine*, 574 F.3d at 694-95; *McCartey v. Massanari*, 298 F.3d 1072,

1076 (9th Cir. 2002). However, an ALJ may give less weight to the VA's decision if the ALJ provides "persuasive, specific, valid reasons for doing so that are supported by the record." *Berry*, 622 F.3d at 1236; *Valentine*, 574 F.3d at 694-95; *McCartey*, 298 F.3d at 1076; *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir. 2010).

The ALJ in part accorded less weight to Dr. VanBiber's opinions because she deemed that the doctor relied too heavily on plaintiff's subjective report of symptoms and limitations and "uncritically accept[ed] as true most, if not all, of what the claimant reported." *Id*. at 36. The ALJ determined that plaintiff's self-reported limitations, as well as his descriptions of the sources of those limitations, were not entirely credible and inconsistent with the record as a whole. *Id*. The ALJ noted that plaintiff's focus at almost every psychotherapy appointment with Dr. VanBiber was on his "wife" who was disabled. *Id*. Dr. VanBiber notes that one of the plaintiff's only social activities is caring for and interacting with his wife. *Id*. at 783, 898-906, and 972. However, the record as a whole—including a form submitted by the friend in question (*id*. at 288) as well as plaintiff's statement to consultative examiner Dr. Gerson that he is single (*id*. at 462)—indicates that plaintiff is not now, nor was he ever during the relevant period, married, but instead has a long-time roommate who is a friend but not a significant other. *Id*. at 36, 783, 898, 972, and 1027.

The ALJ also accorded less weight to Dr. VanBiber's opinions because his own treatment notes, as well as the objective medical evidence in the record, contradict his conclusion that plaintiff's impairments are so severe as to completely preclude him from working. For example, Dr. VanBiber opined that plaintiff could not work because he was seriously limited in his ability to set goals and get along with co-workers, despite observations in his treatment notes that plaintiff was cooperative and goal-directed. *Id*. at 930, 1018, 1027, 708. Additionally, plaintiff stated in a Function Report for the SSA that he has never been fired or laid off from a job because of problems

getting along with other people. *Id*. at 302. Moreover, Dr. VanBiber opined that plaintiff would be seriously limited in "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors," but plaintiff himself stated that he gets along "okay" with authority figures. *Id*. at 708, 302.

An ALJ may permissibly reject a treating physician's opinion when that opinion is inconsistent with the physician's own treatment notes and when the opinion is not supported by clinical findings. *See* 20 C.F.R. §§ 404.1527(c)(3) & (c)(4); *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009). Here, the ALJ set forth an appropriate basis for according less weight to Dr. VanBiber's opinions because Dr. VanBiber's treatment notes, as well as the objective evidence of the record, contradicted the conclusion that plaintiff's impairments were severe enough to prevent him from working. The court concludes that substantial evidence in the medical records supports the ALJ's determination that no objective findings support Dr. VanBiber's conclusions that plaintiff is completely unable to work. Accordingly, the court finds that substantial evidence supports the RFC determination that plaintiff should be limited to medium work with the limitations of only occasional posturals, avoidance of hazards and no more than brief and superficial interaction with the general public, and remand or reversal is not warranted.

## IV. CONCLUSION

Based on the foregoing, the court concludes that substantial evidence in the record supported the ALJ's RFC determination. The court therefore recommends that plaintiff's motion for remand and/or reversal (#13) be denied and that defendant's cross-motion to affirm (#18) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.

These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand and/or reversal (#13) be **DENIED** and defendant's cross-motion to affirm (#18) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and close this case.

**DATED**: July 31, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**